Mr. Schaffer. Thank you, Your Honors. May it please the Court. DuPont and CCPC, as you can tell from our papers, are in agreement with the government on virtually every significant point, including the reasonableness of the ITC's preliminary negative determination in this case. We're likewise in agreement as to the fairly severe factual and legal deficiencies in the Court's CIT's decision remanding that determination. In fact, really the only issue on which we disagree is the standard of review to be applied here, although I hasten to add that we're in agreement that the CIT's decision should be vacated irrespective of which of the two proffered standards applies here. Since there is this lingering question, I'd like to begin by addressing why it's our view that the de novo standard of review ought to be the one that attaches. The government and Celanese both contend that the CIT's decision to remand here was a mere request for clarification and not a substantive review. And as a result, this Court has to evaluate whether that request constituted an abuse of the CIT's discretion. We contend that it did, and the government agrees. I'll discuss that more in a moment. But this predicate that the decision was in fact just a mere request for clarification is simply wrong. The case that sets forth the abuse of discretion standard for request for clarification in the CIT is Taiwan Semiconductor. In that case contemplated a situation in which the CIT as the fact finder was unable to determine whether the evidence was sufficient to support the agency's conclusions. What the CIT and Taiwan Semiconductor in effect said was, ITC, you are supposed to do a causation analysis and you haven't done one. We can't determine whether your analysis is supported by the evidence on the record if it's not there. All tax, which followed Taiwan Semiconductor, confined itself to a situation in which the Court, and I'm quoting here, performed no substantial evidentiary review at all. Nothing for this Court to review. You're really telling us that if in fact the Court felt that it had insufficient information on which to review the decision, it should just have affirmed it? Well, it's a combination of what the Court felt and what the record showed, Your Honor. Simply asserting that there was insufficient evidence doesn't get the Court there. It requires a simultaneous review of the record to see whether in fact the evidence was there, which is why, in our view, we prevail under the abuse of discretion standard as well. In other words, if the ITC makes a conclusion based on the facts that are on the record and the CIT nonetheless says, I don't see it, then that is an abuse of the Court's discretion and it's also a problem as a matter of de novo review because the Commission's determination was adequately supported. So looking at the CIT's 55-page decision, it's difficult to conclude that it didn't undertake a substantive review. On a number of points, it even drew conclusions as to which evidence was the most compelling. And most importantly, as we've detailed in our papers, the CIT itself explicitly found the Commission's determination was not in accordance with law and supported by substantial evidence on the record. That's what the CIT concluded it was unable to do in Taiwan Semiconductor. So the CIT wasn't throwing its hands up and saying there's not enough for me to issue an opinion here. And so that being the case, we find that the argument that this was a mere request for clarification is unsustainable. Well, I'm not sure I understand your point. You say the fact that the CIT was able to issue an opinion. I don't see anything that the CIT told the Commission it couldn't do on remand, right? Well, it couched the discussion in terms of I need a little bit more help. But even a cursory examination of the record has to lead to the conclusion that that's not in fact what the CIT was doing. And there are a couple of examples that I'd like to highlight because they really illustrate also why there was an abuse of discretion here. And they really sort of bring this problem to the forefront. And the first is this issue of purchaser questionnaire responses. The ITC was faced, as it often is, with conflicting information in purchaser questionnaire responses to which some of the purchasers had checked a box that said price was the reason we changed our source. Then a couple of paragraphs later, there's a narrative explanation in the questionnaire response that says, in fact, there are other significant factors, potentially equally significant factors. And given that information, ITC followed up with those purchasers and concluded that, yes, in fact, those other factors were important. What ITC did was say, our view is that the narrative responses that reflect some thought and insight and our follow-up conversations lead us to believe that these other factors were more important than price or as important as price. The CIT said, that's hard to reconcile and I don't follow. I need some more help. But the record is clear of what the ITC did and precisely why it did it. So the CIT can say, I don't understand what's going on here, but the only reasonable conclusion given the record is that what the CIT is really saying is I don't buy the weighting of the evidence, which is impermissible even under the normal substantial evidence standard. Are you saying, in effect, that this is a pretext? That the CIT was really reversing the commission and hoping for a different outcome, but didn't want to expose itself to a severe standard of review? Well, Your Honor, I wouldn't presume to guess what the CIT was trying to do, but what I think is indisputable, at least from our view, is that what the CIT said it was doing was inconsistent with what it was finding on the record and recognizing that ITC had done. And what I think that speaks is an application of the wrong standard of review, which again is why, in our view, this should be vacated even if you apply the abuse of discretion. Let's presuppose complete good faith on the part of everyone in the system. And let's further assume that the, suppose I'm sitting by designation in the CIT and not being an economist, I have a little more trouble than somebody who works as an economist, say, for the commission would have with this kind of material. And I say, you know, I've studied the commission's opinion. It's very thorough. It's very persuasive in many respects. But I have three areas of concern because I just can't connect A to B in the logical way. I don't see their logical connection between A and B. So I need some help. Can I send that back even though the other judges might look at it and say, no, no, come on, that's pretty clear. What's wrong with saying that I ought to have the discretion, at least, to say I need more help in order to make the judicial review process more rational? Well I think what's wrong with that, Your Honor, is that there is a reason why the CIT is constrained in its review in preliminary negative determinations in the first instance. But Your Honor is talking about Mike made sense in the context of a final determination where the commission has had substantially more time to paper the record, to flesh out its analyses. But the whole idea behind the narrow standard of review that the CIT is obliged to apply in the preliminary negative determination is to allow the ITC discretion to get rid of bad cases without being subject to the sort of niggling evidentiary review that's more appropriate in other types of determinations. And so if the CIT in the situation where the record fully supports the ITC's decision and where the ITC's basis for its conclusions are there, they're logical, they're rational, there's not a clear error of judgment, if the CIT nevertheless has the discretion in that situation, as Your Honor has put it, to send it back, then you're undermining that entire structure and the reason for the way the CIT's— But Counsel, this isn't one of those cases because when it was sent back it came out the opposite way. Well, we don't dispute that— Well, I don't agree with that, Your Honor. I don't think they came out the opposite way because they got into more detail. And I think in that regard it's notable that the three commissioners who voted negative the first time voted negative the second time as well. The commission's view changed because there were three new commissioners sitting on the commission. And we don't dispute that reasonable minds can come to different conclusions based on the same record. And that's, in fact, what happened here. But that's different from the question of whether the record and the conclusions drawn therefrom in the original determination were sufficiently logical and rational and tied to that data so as to preclude any possibility of a remand. Okay, let's—in any case, you're not challenging the result now, just the procedure. We're not challenging the subsequent result, no, Your Honor. It's our view that based on the record as it appeared to the CIT at the time that it made its remand determination, it ought to have let it go. All right. Let's hear from Ms. Aldous. Thank you, Your Honor. May it please the Court, we agree with DuPont that the commission— Who are you representing? My name is Mary Jane Aldous, and I represent the U.S. International Trade Commission. Okay. We agree with DuPont that the commission's initial determination was neither arbitrary nor capricious. In our brief, we assumed that this Court would not reach that question, however, until after it had examined the nature of the lower court's remand. Moreover, rather than trying to characterize the lower court's wide-ranging review as anything other than a remand for further explanation, we've assumed that predicate, too. Nevertheless, there are two reasons why we still disagree with Selanese. This case is not just like Altec's in Taiwan Semiconductor, where this Court found that the lower court's remand was not an abuse of discretion. First, in both Altec's and Taiwan Semiconductor, the lower court remanded for the commission to explain an issue that it had not addressed in its determinations, the significance of non-subject imports. But, Counsel, is there a difference between an issue not addressed and an issue addressed in such conclusory fashion that the reviewing court is incapable of ascertaining the methodology or the rationale behind it? Yes, Your Honor, I believe there is a difference, and So a court can address something in a cursory fashion, and that makes it, insulates it from this abuse of discretion review? If I may, Your Honor, where I think I disagree most with Selanese is in terms of the, while we do not disagree that a court has discretion when reviewing a negative preliminary determination, it's our view that this discretion is more limited by virtue of the fact that it's reviewing this under an arbitrary and capricious standard of review. This discretion is narrower by The commission has 45 days to make an investigation, and the commission has discretion, and Congress reinforced this discretion by giving the reviewing court a narrower review standard, the arbitrary and capricious review standard. But does it matter whether it's de novo or arbitrary and capricious if the commission doesn't articulate an explanation that the CIT judge is capable of understanding in light of the factors that are at issue? I mean, it seems to me that that arbitrary and capricious versus de novo doesn't matter in a situation where the commission's determination is simply devoid of rationale. If the commission If that's what the CIT judge is determining. Your Honor, if the lower court were to determine that the commission's determination lacked any rationale or that the commission had not analyzed the factors or made some other sort of clear legal error, then yes, I agree with you, Your Honor. However, this was not that case. You're saying then that if, in fact, the court feels that it's a little bit fuzzy or unclear, too bad, just defer to the commission? No, Your Honor. This is not a situation where we assert that the lower court was fuzzy or unclear. In fact, in most circumstances, it was quite clear what the methodology was that the commission used. And, in fact, the lower court repeated that methodology. Perhaps so, but there were certainly areas for which the court requested additional treatment. And you're saying, I gather, that if they felt they needed more information, they should just defer and let it go. It's not a situation where further explanation was necessary, in our view, yes, Your Honor. If they thought it was necessary is my question. Whether or not the commission thought it was necessary. Certainly, the standard is not whether the commission thought additional explanation was necessary. The standard is whether or not the lower court thought that it was additional information was necessary. But what I'm asking for is this court to look at whether or not that lower court abused its discretion, in some circumstances, by asking for further explanation where an explanation had already been given and in a situation where it was only supposed to be reviewing under an abusive discretion. So what you're really saying, I take it, and I don't want to put words in your mouth, but I will anyway, is that the lower court is entitled to ask for an explanation if the lower court, in good faith, is unclear about what's going on, except that the reviewing court over the lower court then has to make a determination as to whether the lower court was being foolhardy in concluding that explanation was needed. Yes, Your Honor. That's correct. And the question then becomes, well, what's encompassed within this notion of foolhardiness? Is this something we ought to say, it's clear enough to us, therefore we reverse? Or should we say, we can see how it might be unclear to the judge acting in good faith and therefore the judge should be given the opportunity to get some more input from the commission? Your Honor, just as we would not expect the CIT to rubber stamp us, we would not want you to rubber stamp the lower court. If you look at the nature of the remands, the nature of the further explanation that the lower court asked for, the lower court was asking for an explanation, to give an example, with respect to the methodology used to define subject imports. The lower court understood what the commission had done. The lower court said, yes, we understand you used importer questionnaires. That's something you've done in the past. It's reasonable. We understood why you did it. DuPont had challenged the underlying data. So had Salonies. They gave good reasons for challenging it. But even though it was reasonable to have done so, and that's in a judicially approved methodology, in this case I'm going to remand it anyhow. Because what if you had instead adjusted official statistics? Why couldn't you have done that? Well, this court has never required the commission to explain an alternate methodology or an adjustment to an alternate methodology that it hasn't used. Particularly here, where the commission was using the same types of methodologies that it has used with judicial approval in the past. Counsel, suppose that I agreed with you, and I thought that, well, that actually is an abuse of discretion, especially in that case because the CIT cited the best information available, and that's not even the legal standard anymore. It wasn't at least at the time this was implemented. Suppose I agree with you, but don't you have to establish that all, is it six or seven? I don't remember, but all six or seven of the different bases the CIT said needed further elaboration or explanation, don't you have to establish that all of them amounted to abuse of discretion, each and every one? Because if the CIT had a legitimate basis for needing more explanation on any one of those, then it left it without the ability to affirm or reverse or make any considered and important judgment on the accuracy of the, or whether or not the commission's judgment was arbitrary and capricious, if even one of these was missing. So you have to actually prove to us it's an abuse of discretion on all of them. Isn't that right? No, Your Honor, although we do believe that each instance was an abuse of discretion. But under this Court's holding in U.S. Steel, this Court recognized that even if some of the subsidiary findings underlying the commission's determinations may not themselves be supported, nevertheless, if the commission's determination as a whole is supported and is consistent with the standard, then you can uphold the commission's determination. But this is on a decision on the merits, if I recall correctly, not on the decision as to whether it's permissible for the trial judge to ask for the commission to give it some more help. Your Honor, the same logic would apply here. Because at some point, once you make the determination that on one of these issues, on a couple of these issues, on several of these issues, the lower court would not, was incorrect in remanding, you no longer know whether or not the lower court would have remanded had it not made those findings. And so at that point, this Court needs to step in and say, okay, at this juncture, we're now going to step in and apply that trial court standard to review and review whether or not the initial determination was arbitrary and capricious. But you didn't ask for our review at that stage. Here, it's all over. It's gone back. It was redone. There was a modified result. No one's challenging the result. What are we debating? Your Honor, there was no opportunity for anyone to challenge the lower court's first decision because as this Court recognized in Costile, there was no final judicial decision. It wasn't until the lower court affirmed the Commission's remand determination that there was an appealable final decision from the lower court. And at that point, yes, Your Honor, DuPont did challenge the remand, the effect of the lower court's decision, although it doesn't here challenge the remand determination itself. This is a purely procedural question, but it probably doesn't ultimately affect the outcome, but I'm curious. You are here as an appellee. Did you have the statutory authority to actually file an appeal in this case, had you so chosen? Your Honor, as you're aware, we did not file an appeal in this case, and certainly the reasons why we didn't file an appeal are privileged. But as we indicated in footnote 9 in our brief, on a number of other occasions where the Commission has not appealed a particular decision, as this Court has recognized, it wants to know what the Commission's position is as to the merits of the case. Sure, of course. No, I'm not criticizing you for having appeared as appellee. I mean, you're perfectly entitled to hold back and see if anybody else appeals and then come in, even supporting the person that does appeal. But statutorily, could you have taken an appeal in this setting? I mean, suppose DuPont had decided it's not worth the trouble. Could the Commission itself and alone have appealed under these circumstances? I mean, it would be appealing from, you know, in an order that had been sustained because of an order that had previously been rejected. You recognize that there is an awkward situation there, Your Honor. However, this Court, I believe, anticipated in Costile that that might be the possibility, that it might recognize an appeal in that sort of a situation. That's not the situation. But even for the Commission, in other words, rather than just for the private party. My reading of Costile was that it suggested that might be a possibility, but I don't want to put words in the Court's mouth either, as to whether or not it would have entertained such an appeal. All right. Okay. Now you're sharing your time with DuPont? I am, and we had allocated our time, 10 minutes, 10 minutes, 10 minutes. So I believe I'm actually bleeding into some of Ms. Berg's time as well. I appreciate the Court's indulgence. Well, it seems we should get the whole 10 minutes. Yeah, I used up some of her time with a collateral matter, so I'm. Okay. Ms. Berg. Thank you. May it please the Court, my name is Gratia Berg. I'm from Gibson-Dunn representing Salonese today. In this case, the lower court remanded on more than half a dozen issues. We believe that if the Court finds that the lower court did not abuse its discretion on even one of these issues, the Court should affirm the lower court's remand. The Commission and DuPont argue that it is that the Court remanded on issues that it wanted to have the Commission explain, but that the Court should have known what the Commission's thoughts were. It is not for the Commission or DuPont to decide if the lower court has sufficient information to make a determination and rule on whether or not there is a rational basis. But is it for us to make that determination? Certainly at some level. Well. That's why we're here. Yes. Right. But as this Court found in Taiwan Semiconductor, a Court's judgment as to whether the record before it needs explanation is a determination that lies within the discretion of the Court. It's a good place to start, but it doesn't take us to the finish line, right? Because if we look at the determination that was made, even assuming that we're prepared to do as the Commission has recommended, but not DuPont, to view this as a remand for explanation as opposed to effectively a reversal of the Commission, then nonetheless there is still room for the Court to say, no, trial court, you really had plenty here. You shouldn't have sent it back with all the loss of time and the consequences of cost and so forth for the litigants. And so the question is, I mean, that's the standard, right? In theory, that could happen. There could be such a case. Why is this not that case in light of? Well, I would like to go through a couple situations. Good. But before, I also want to say, point out that the DuPont or the Commission and we in our own research has never found a single case where the Court has found that the lower court's decision to remand for further explanation was an abuse of discretion. In the context of the CIT or in the administrative law? We were not able to find any. Any administrative law case in which there's ever been an abuse of discretion? They have not cited, and I am not aware of any. Okay. The other issue I wanted to just touch on is they have said that if the record of the whole, that because the Commission was affirmed by the lower court on several issues, that that is sufficient. But based on the standard of review that this court set forth in American Lamb, which is in a preliminary negative, the ITC must find clear and convincing evidence of no material injury. It is impossible for the lower court to assure itself that the Commission's determination properly found clear and convincing evidence of no material injury if the lower court reviewed only part of the record. Counsel, suppose that the Commission didn't articulate something, but it's clear the record supported it. Clear, I mean, especially since the review is going to be for the arbitrary and capricious standard, the record supported it. Should the CIT or is the CIT permitted to force a remand for explanation, ignoring the record evidence that maybe does establish this as gospel truth, or in that circumstance is the CIT supposed to look at the record? Yes. What happens under those circumstances? The CIT, the lower court, should uphold the Commission if it is able to discern the path. And if the record supports it. In one of the cases the court, and I'm sorry, I forget which one at this moment, but the court said, see, the Commission did not spell it out, but it's implicit that they found that there was no underselling because the numbers went from 25% down to 2%. If the lower court can find the path. In this case, in some of these instances, the lower court could not discern the path or the facts did not support the record. Okay. So, for example, with regard to the remand for the scope of non-subject imports, the Commission said the total volume of the out-of-scope PVA was relatively small. Right. And the CIT judge said, where did you get that from? I can find no evidence that it is, in fact, relatively small. For all we know, it's enormous. That means that he could find nothing in the record, not just nothing in the Commission opinion. Correct. And it would have been whose burden to bring that forward to show to the CIT if the opinion itself was deficient? The parties argued it, and the court felt it could not get an answer. It could not get an answer from the Commission in the briefing. It was not just the court had overlooked something. Okay. That's what I'm getting at. The only way the court could find out. That issue is a very important issue, and it is not just that the footnote said that it was a relatively small volume. It said it was an undetermined volume, which means the Commission itself did not even know what it was. The only place anything at all was on the record was in a footnote in the staff report. I assume you would argue that if the Commission was wildly inaccurate that this is a small volume, but in fact there's a large volume, these non-scope PVA things that are included, that that could dramatically change the entire outcome of the case. Yes. That's why something like that, standing on its own, would be a sufficient basis for remand for explanation, even if there was an abuse of discretion as to the other six. Yes. The Commission in this case found that the volume of Taiwanese imports was large. It's a factor that goes to an affirmative. It does not support the negative. The Commission found that although the volume of Taiwanese imports was large, they didn't have a significant effect. It based that finding of not a significant effect because it found that when the anti-dumping orders were issued against imports from other countries, Taiwanese imports didn't come in and take advantage of this in the market. It was critical to the Commission's decision on volume what the trend would be with the subject and the non-subject imports. So if this had been a large amount, a large volume that skewed it, it could have changed at least the Commission's finding on volume and perhaps the whole case. You've mentioned the volume, and I think you were about to maybe tick off one or two other examples of the half dozen or so remand issues. Sure. I'd be glad to go through all of them. It would be helpful to us, at least to me, if you would focus on the particulars of a couple of them. The strongest. Another one is the statutory factor of price depression. The Commission said the prices were stable or increasing during the end of the period of the investigation. When the Court looked at the numbers itself, it found that many of the prices were declining during this period of time. ITC and DuPont argue that the prices declined more in 2001 and 2002 when the Commission was finding injury from the imports from these other countries. But based on this theory that does Taiwan come in and take over the market when the anti-dumping orders are issued in 2003 and 2004, the end of 2003, mid to late in that year, if you are looking at that period, the numbers do not support what the Commission said. The Commission found they're increasing. The Court looked at the numbers, said they're decreasing. The Court has a right to remand to ask for further information. Is it asking for further information or is it asking for further enlightenment about the information that's already in the record? Always further enlightenment about what the information is. The Court did not, as I understand Judge Ridgeway's opinion, the first opinion, did not say that this was in order to obtain more evidence, right? No. Now, the one thing that, and this is, I think, brought up by DuPont, if I recall correctly, in its brief. Judge Ridgeway's characterization in the second opinion of what she did in the first makes it sound more like a reversal than a remand for explanation. Would you agree? I would not. At least it can be read that way. But what happened is the Court, in this case, affirmed in part and remanded in part, as courts always do. This is very similar to Altex, in which the lower court had affirmed on volume on one of the four grounds and it remanded on the other three grounds. I would dispute what DuPont has said about what happened in Altex and Taiwanese Semiconductor. I believe that these cases are very similar to ours and the correct standard of review for this Court is an abuse of discretion. Referring to those items, there was enough so that the Court of International Trade might have had a sense that perhaps it had been incorrectly decided. Isn't that your impression as well? Do I think that this lower court, in this case, thought it was incorrectly decided? I do not know that. And the Court perhaps wasn't certain either. Yes. But at least there was enough that had been raised to leave the speculation that more information might have weighed on the other side. I would say more that the Court felt that it did not have enough information to make that determination on whether or not the Commission had reached a rational conclusion. Okay. Any more questions? No. Okay. Thank you, Ms. Berg. Mr. Schaffer? Thank you, Your Honors. I'd just like to make two brief points in rebuttal. The first, there's been some discussion in Judge Moore's questions and others about the Commission's findings that were devoid of rationale. And as far as I can tell, what we're really talking about is the finding on non-subject imports. That's the only one, as far as I know, that's not supported by a fairly voluminous analysis. And I just wanted to make a couple of points about that. First of all, as Counsel to the Commission has noted, the Commission found that import volumes were significant. The question was impact. What impact did they have in the U.S. industry? And the ITC found, for a variety of reasons, not only because the Taiwanese volumes didn't take advantage of the market, but for a variety of reasons, there was not a significant impact on the U.S. industry. The focus was on what the volumes did, as opposed to what they were, which really calls into question this notion that Celanese is raising that the non-subject import volume issue was a potentially outcome-determinative one. We've said in our papers, and we maintain, we don't see how that can be, given that the focus was on what the result of the volumes was, whatever their quantum was. And separately, for an outcome-determinative issue that was so critical, it was never raised. At no point in the administrative proceeding did Celanese or anybody else say, gee, we ought to fix these numbers. You ought to be careful, Commission, when you look at the non-subject imports, that you carve out the out-of-scope numbers. Nobody argued that. And so there again, given that, and given what the Commission found as to the impact of those imports, we find it impossible to conclude that they were a potentially outcome-determinative issue. The other point that I'd like to make is that if you follow Celanese's argument about standard of review to its necessary conclusion, any time the CIT indicates that it's asking for more information, that decision becomes, in effect, unreviewable. There's no way around, when the CIT says it's asking for additional information, looking at the record to see whether that determination makes any sense. And the example that Council ITC has provided, I think, is an apt one, where the subject import volume issue had been clearly decided. The reason for it was that both Celanese and DuPont had said the IM-145 census data are unreliable. And the Commission said, okay. Nobody argued anything differently, and yet, on appeal, Celanese comes in and says, gee, you really should have used the very data whose deficiencies we pointed out during the administrative proceeding. An issue like that, there's no way around looking at the record to determine what it supported and what it didn't. You cannot simply conclude that the CIT said it needed more, and therefore this Court's hands are tied pending the outcome of what it asks for. But there certainly is, I think, an understandable reluctance, if I read the case law correctly, to say to a trial judge in an APA review setting, no, you may not ask for further enlightenment as to what the agency has done. Your choices are either, you know, just take what you've got, even if you find it difficult to work with, and either up or down. Those are your choices. I don't know of any cases, and the question is put to you, do you have any cases in which a court has said, notwithstanding the reviewing courts, the first reviewing court's statement that it was looking for guidance, that the second reviewing court said, no, we don't think you needed guidance, and therefore we reverse? I'm not aware of any such cases, Your Honor. So this would really be a rather dramatic departure from the general trend of administrative law, as I understand it, would it not? I don't see that it would, Your Honor, because I suspect, I would submit, that the reason why we don't see a lot of those cases is that the procedural posture here is relatively unusual. In the lion's share of these cases, what you have is an appeal of the agency's ultimate determination in the second go-around. We opted not to do that here. But that's a very unusual procedural posture. So given that situation, it's not surprising that there's not a lot of precedent in which the posture was the same. And as to the reluctance, there again, that's true. But if ever there is the case where the court has to step in and say, this was out of bounds, this is it. Well, that's really sort of the question put to us, isn't it? I mean, I think you put it very well. If this is a case that fits into the if ever there was a case mold, then I think you're probably right. I mean, there has to be some case out there in which we would say, no, you've gone too far. But it does sort of have to be one of those if ever there was a case cases, doesn't it? Well, I'm not sure that it does. But I think in any event, this is that. And the CITs, where I guess I was going with that was the CITs decision here was well out of bounds. OK. OK. Any more questions for Mr. Schaffer? Thank you. Mr. Schaffer, Salvez, Gisbert.